22-1631 Equashield Medical v. Kadakia My name is Robert B. Weintraub, and I represent the Respondent-Appellant, Ronak Kadakia. The principal issues on this appeal are whether the District Court applied the correct standard for summary judgment akin to summary judgment in granting the injunction, and whether or not she did, there are many issues of fact where her conclusions were clearly erroneous. Now this is a sex discrimination case under Title VII of the Civil Rights Act of 1964 as a sex plus gender plus sex discrimination action. Is there also a pending arbitration? Yeah. And that involves whom? There were the arbitration named five defendants. Two of those respondents, I should say, brought the petition below, which is on appeal. With respect to the other, there is an arbitration, and it's ongoing. Barely ongoing. It was stayed below until Judge Preska made her decision. When I appealed that decision, I filed a T-1080 motion asking this court to stay the arbitration. I got from the Administrative Office of the Second Circuit, even though it's not in writing, that that was the wrong process, that I should have gone back to Preska to continue the stay of the arbitration. At that point, though, I just argued to the AAA that it shouldn't go forward. It's gone forward a little bit, but not so much. And they've sort of delayed things for the summer to see what's happening here. They didn't say that officially, but that's what, in effect, they did on the schedule that they imposed. The two petitioners below were one of the three individual respondents, Marino Crelli, who is a, we assert, was product manager of both the parent medical LTD, which I'll call LTD here, and product manager of LLC, which is the major sub which sells 80% of the product worldwide. Crelli is the inventor of the products as well, and one of the major shareholders. The other petitioner below was LTD, saying that my client was not employed by LTD, but by the main sub, LLC, and therefore, they didn't have to arbitrate either. And that's how, and the judge found that Crelli had no connection to LLC. He was not product manager. He had no connection at all, and hence, he couldn't be forced to arbitrate. And at the same time, she found that we couldn't pierce the court with bail, showing that the parent should also be required to arbitrate. Now, the, we submit the judge applied the wrong standard. She acknowledged that the correct standard is akin to a summary judgment standard. You know, you submit, you consider all relevant evidence submitted by the parties, draw all reasonable inferences in favor of the non-moving party, and the moving party is entitled to the injunction if the party opposing can't rest on a denial, but must submit evidence showing that there is a dispute of fact to be tried. We say that that's, she paid lip service to that standard, but did not apply it. What she did is she turned it around, and she said that the burden was on the non-moving party, my client, to prove on the papers that Crelly was an LLC employee, and or the product manager, and to prove that LTD, and to prove that LTD, the bail should be pierced. Can I ask just kind of a basic framework question? So I understand the, LTD is not a signatory. Correct. And so your theory for there being the ability to force a non-signatory to arbitrate is one of the five factors under the case law, piercing bail, and you have an argument on why you think the district court got that wrong. Crelly's not a signatory. Correct? Well, we claim he's product manager. But a signatory to the agreement is a different question than whether someone may fall within the agreement, correct? I would submit that the judge conceded below that if Crelly was product manager, that it's so facto as being product manager of LLC, the sub, that put him within the agreement. It just seems to me the first question with Crelly is the same first question with respect to LTD, which is what is even the theory for binding a non-signatory? Well, no, if he was product manager of LLC, whether or not he signed any particular document, he would be required to arbitrate. And the judge essentially admitted that in a very short decision. I mean, judges don't much make concessions. I agree it's not talked about in the district court opinion, but I'm not sure I understand why the first step here isn't the same one with respect to both Crelly and LTD. And, well, that's, I mean, both are non-signatories. She didn't handle them the same way, that's all I can say. I understood. Yeah. Do you have a theory that they should be handled differently? I think the facts show that they should be handled differently. Crelly signed four letters as the product manager of LLC. Those letters were sent to the federal government, to NIOSH, which is a subsidiary or the parent of the CDC, National Institute for Occupational Safety and Health. They were on LLC's letterhead with the title at the upper right, where they had the New York address, not the Israeli address for the parent, but the New York address, the New York telephone number, and it said product manager Marino Crelly. And he signed four letters. He was writing on behalf of LLC. There can't be any dispute about that. He signed all four letters. One of them he signed in TypeScript, well, excuse me, in Script. And the other three signed TypeScript, it's like typewriter. And they said Marino Crelly, product manager. And none of the letters mention LTD in any way, shape, or form. They only mention LLC. So I don't see how the only conclusion can be that those letters show that there was a disputed issue of material fact as to exactly what he was. Help me with something that I'm confused about it. It may not be in the record, but I'm so confused about it. This is Title VII. This is an employment discrimination case, right? And you have her employer in arbitration, right? Correct. And so what role are these other people playing? Crelly probably made- What's going on here? Nothing other than Crelly probably made the most of all the sex discriminatory statements. Secondly, not only did he do that, my client who was very senior in the company, right below, like the CEO. Well, all that comes in in the arbitration. Well, I think that they're going to argue that she, that Crelly won't be made to testify. They're going to squawk like anything. And I want to be sure he can testify. We can get any relevant documents. In terms of deposition. And I think- In terms of deposition, can't you? But your client has a separate share incentive plan with LTD that provides for jurisdiction in Israel. Isn't that what's going on here? Isn't that how this claim should be brought against LTD? I'm sorry, I didn't hear what you said. Your client has a share incentive plan, is that what it's called, with LTD. A what kind of- The stock option. The stock. Yeah, but- Isn't that what you're after here? Well, we say that under the Civil Rights Act of 64, Title VII, we can value the stock without getting the options. The company recently sold three, and it's not in the record because it happened after the notice of appeal was filed. Sold 25% of the company for $300 million. This is a relatively small private company. And that values the whole company at $1.2 billion. The Israeli press valued the sale at $1.3 billion because there were $100 million of dividends paid at roughly the same time. So- So can't you argue in the arbitration that her measure of damage is just the value of the options that she was entitled to get but didn't get? I think that there's going to be a problem with that, not from my point of view. But I think that the easiest way to do this is improving the sex plus sex discrimination, which is in effect per se. You don't have to go through the McDonnell-Douglas analysis, that Crowley made most of the comments. Not all, but enough of them that it would be very useful to have him as a respondent. And he, for whatever reason, is squawking loudly against having anything to do with this case, even though he does. He signed the four letters. There's a Dun and Bradstreet report which says that he was a principal of the company and identified him as the product manager of the company, and identified someone else, Eric Shemtov, as the CEO. We say that, and we put most of this evidence in through my client's declaration. Obviously, it's all in the statement of claim. But she made a statement under oath, and a good deal of this is in that statement. It's, I think, A183 through about 191. Okay, counsel, you've reserved a couple minutes for rebuttal, so you can use that now if you want to keep going, or we'll hear you after. Let me just take one minute and save one minute. This is your rebuttal time, okay. No, I'm going to use one more minute. I want to discuss that in paying lip service to the standard, the court held that we did not prove that Crelly was an employee of LLC, and she said we didn't even discuss any of the theories for bringing LTD in as a non-signatory. In fact, we discussed in both the initial appeal brief and the reply brief in some detail the theory of veil piercing, and we discussed the virtually complete overlap of executive management, the parent's domination, no business discretion by the subsidiary, LTD didn't deal with the sub at arm's length, etc., etc. Now, we, so we think that between the four letters that Crelly signed, the Dunn's report, the fact that my client put in a declaration under oath saying that these people held these positions, including Crelly, and the same three senior people held the same positions with both the sub and the parent. The sub did 80% of the parent's worldwide revenues, meaning the New York company, the US company. And we think it's pretty clear that Crelly has not shown that there are no undisputed issues of fact on which he could have, akin to summary judgment, the injunction granted. Thank you, Mr. Weintraub. We'll give you a minute for a vote. Mr. Goldstein, whenever you're ready. Good morning, your honors. May it please the court. Daniel Goldstein of Smith, Gambrill, and Russell, LLP, Council for Petitioners. Appellees, Equishield Medical, LTD, and Marino, Crelly. If I may just begin by quickly summarizing our principal points on appeal, because there was a lot that was just said by council on argument. Judge Preska did not err in granting the petition to stay arbitration for five reasons. First, appellees are not signatories. Neither of them are signatories to the employment agreement, which contains the arbitration clause giving rise to the arbitration. Neither agreed to arbitrate disputes. Second, there are five recognized theories for binding non-signatories to arbitration. The respondent, Kadakia, did not sufficiently allege or to lower court and nor to this court. Third, Kadakia does not allege facts sufficient to support a bail piercing theory, which is the claim she makes on appeal. Fourth, the stock option agreement between LTD and Kadakia, which is the reason that LTD is in the arbitration, contains a form selection clause that confers exclusive jurisdiction over disputes in connection with their stock options to the courts in Tel Aviv, Israel. And fifth, with respect to Crieli, the evidence presented by appellees establishes he's not an employee of LLC. That's the claim that was made by Kadakia to the lower court, that Mr. Crieli is an employee. The arbitration agreement is between employer, employee, LLC, and Kadakia, and any employees of LLC. That's what the agreement says. Crieli's not a party to the agreement, but the agreement is between Kadakia, LLC, and its employees. So the argument that was made to the lower court and to this court is that Crieli was an employee. And Judge Preska accepted all of the allegations that were made by Kadakia, accepted all of the evidence in the lightness favorable Kadakia, because the only evidence that was presented was that over the course of three years he wrote four letters and that he traveled to the US two to four times per year. And that this made him an employee or an officer of LLC. The court found- Can I ask my framework question that I asked your colleague on the other side? And I understand it's not how the district court approached it, it's not really in the briefing. But I'm just confused why Crieli, who's an unwilling non-signatory to the arbitration agreement, the first question isn't, what's the argument for one of the five factors under Thompson CFX? You're correct, there is no argument that was made to the lower court to bind Crieli to the arbitration agreement. He's not a signatory, so- He's not a signatory and he's an unwilling non-signatory to an arbitration agreement. Is there any first step other than, are one of the five factors available? There's no other first step. You don't go to the arbitration agreement and ask, is he within the scope of it? You first start with, is there an arbitration agreement? That's correct, and I don't think the lower court erred by not doing that, because those arguments weren't made to the lower court, correct, Kodaki? It did not say that Crieli should be subject to arbitration under the grounds of assumption, or veil piercing, or any of the other five recognized theories. Incorporation by reference, estoppel, those arguments were not made. I guess my question is, did you waive the argument that as an unwilling non-signatory, the first step is whether one of the five factors are present? I would say no, we did not. I respectfully disagree with Crieli's evidence to the lower court, was that he's not subject to the arbitration agreement, he's a non-signatory. And for that reason, I don't want to say the burden shifts, but it's now Kodaki's argument to make that, well, no, he falls under one of these five theories, none of those arguments were made. And, you know, there's certainly evidence in the record that was presented by the appellees that Crieli is not subject to those five alternate theories, you know. He is a board of director of LTD, of the parent, he is founder of the product, and, you know, he wrote a couple of letters, and he visits two to four times a year to discuss regulatory matters pertaining to the products of the Israeli company, and he was at all times acting for the LTD. What in the demand for arbitration, if anything, is the specific claim about him and about LT, LT, I'm sorry, LCC, L-C-C. L-L-C. L-L-C. Sure, the subsidy, the claims that are made in the statement of claim in the arbitration, if I may paraphrase it, are that the employee, Kodakia, was, well, she was terminated from her employment. The facts are that she did not go back to work in the middle of COVID, and for whatever reason, actually, I'm not here to speak on behalf of LLC, I don't represent LLC.  Ms. Kodakia alleges in the SOC that that employment was based on a discriminatory factor, based on her gender, and she's asserted claims that all of these five parties to the arbitration, LLC, its parent, LTD, and the three other individuals discriminated against her, LTD, and Crihelli's response to that is, we didn't employ you. We're not subject to your arbitration agreement. You can proceed against your employer. You can assert these claims against your employer, and the employees of your employer, the other two individuals, Shemtov and Ganor, are directors of the LLC, and they did not join in this petition. That's why Crihelli is here, because he is not a director, or an employee, or an officer of LLC, and LTD's position is, we did not terminate your employment. Well, all we did, LTD, is give you a stock option plan, and your agreement, and the terms and conditions of our arrangement, is set forth in that plan, which has a Israeli form selection clause, and they never agreed to arbitrate employment discrimination claims in New York, and the test that's applied by this court is, you know, is there an agreement to arbitrate, and if not, do the non-signatories fall into one of those five categories, incorporation by reference, assumption, agency, veil-piercing, estoppel. The arguments made by Kedokia to the lower court was that LTD should be bound to arbitration because of a veil-piercing claim, and Judge Preska correctly found that, you know, those elements were not nearly sufficiently pleaded. There are ten factors that courts consider when piercing the corporate veil to succinctly summarize absence of corporate formalities, inadequate capitalization, use of corporate funds for personal use, overlap in ownership and personnel, that is the one element that was pleaded, common office space, business discretion of the dominated corporation, whether the corporations deal at arm's length, payment and guarantee of debts, use of the parent's property. None of, nine of these ten factors were not pleaded to the lower court, and in addition to that, Kedokia would have had to allege, because New York courts disregard the corporate form reluctantly, that the parent exercised such control over the subsidiary that the subs become a mere instrumentality of the parent, and such control was committed a fraud or other wrong. None of these were alleged to the lower court. The lower court was correct to find that there's no basis to pierce the corporate veil. There's no challenge to the presence in the arbitration proceedings of her employer, is that right? That's right. Arbitration's continuing as we speak against her employer, LLC. And if I may just make one more point, which is that with respect to Cree-Helly, so I addressed LSD. With respect to Cree-Helly, the court applied a summary judgment standard properly, which is to accept all of the evidence, all of the allegations presented by the non-moving party in the light most favorable to the non-moving party. And what the lower court did was accept that, okay, your evidence that Cree-Helly should be subject to the arbitration is that he's an employee, because he wrote four letters, because he visits the U.S. two to four times, and because none. I'm accepting all of that as true. I find that those do not factually make him an employee. That was not clearly erroneous finding by the lower court. But do you agree, the right way to think about it is you get to that question only after you've determined if there's an arbitration agreement. That's a scope of the, as I see it, that's a scope of the arbitration analysis that comes second if there is an arbitration agreement. And it's the if there is an arbitration agreement that asks, that notes that we have an unwilling non-signatory here. And so one of the five factors has to be established. The arbitration agreement at issue here provides that it's between employer and employee, between Kodakia and LLC, and any of LLC's employees. And the other employees, and it's directors and officers. The other directors and officers have conceded that this provision is going to control here. And we're going to abide by that contractual provision. And that's the provision that's being litigated, whether or not Craheli is an employer, officer, or director under the contract. That's the argument that was raised, and we've accepted actually that if he is an employee, he would be subject to arbitration. But he's not. And the court did not clearly err in finding that he's not. Thank you, counsel. Thank you, and we respectfully urge the court to affirm. Thank you very much. Mr. Weintraub, you have one minute for rebuttal. First, if Craheli is the product manager of LLC, that makes him an employee of LLC. There's an employee handbook, which is at appendix 274 at SEEK, which talks about the remedy being arbitration. So we're saying he's product manager, he's bound by that. It doesn't matter what he's selling. I'm still confused on this one issue. You've got a LLC in an arbitration. Let's say you prove that your client was terminated as a consequence of sexual discrimination, okay? What impediment is you prove all these other, they still go to a maternity leave, they still move out of the state. And they farther because of gender discrimination. Why do you need all these other people? What's going on here? They're the people who made the sex discriminatory comments, and I want them at the arbitration to testify live. I think you talked about depositions earlier. I don't think this case, it's not a big antitrust case or a securities case, and I've done a lot of those. And I think that I just want the documents, and I want the live testimony. And secondly, Mr. Goldstein just said that my client didn't go back to work during COVID or after COVID. That's flat out a lie. They enabled people to work from home. She even had a separate agreement with the chairman of both LLC and LTD, a written agreement at page A270, permitting her to work from home. But she wanted the separate agreement because she'd had these young comorbid kids. In addition, her notice of termination, which is A272, does not give any reason for her termination. That's because she was a star who got virtually the highest possible grades on her reviews, which are also in the record. They wanted to get rid of her because they wanted her options back. Because they knew she didn't have the money to exercise them within a certain length of time after being terminated. And that's all in the statement of claim. And to say that she didn't go back to work is totally untrue. And third, Title VII cases are to be liberally construed. And we're concerned because we're not going to go to arbitration in Israel concerning what's really $13 million in actual damages. because that would be her 1% valuing the company at $1.3 billion, now that there has been an actual investment by a private investor. And the- Mr. Weintraub, if you could wrap up, please. Well, I would just tell the court to go to the reply brief. Kodiaky's reply brief, which toward the end lists why it's appropriate to say that we don't need to go to Israel. They're not options. The company's been valued. And it has that toward the end of the reply brief. Which I think ECF 104- Thank you both. We'll take the case under advisement. Thank you. That concludes our arguments for today. So I'll ask the courtroom deputy to adjourn. Court is adjourned.